UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| EDWIN JAVIER CASTRO RAMIREZ,<br><br>Petitioner,<br><br>v.<br><br>BRISON SWEARINGEN Sheriff, Clay County Jail, in his official capacity, *et al.*,<br><br>Respondents. | ) | No. 2:26-cv-00530-JRO-MJD |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Edwin Castro Ramirez's petition for a writ of habeas corpus seeks release from the Clay County Jail, where he is detained on behalf of U.S. immigration authorities. For the following reasons, his petition is **DENIED**.

**I. FACTS**

Castro Ramirez is a Colombian citizen and national. Dkt. 1-3 at 5. He presented for inspection at the San Ysidro Port of Entry on April 30, 2024. Dkt. 8-1 at 3. Immigration officials deemed him inadmissible and initiated a removal proceeding. *Id.* at 3, 5. However, the government granted him humanitarian parole and permitted him to enter the United States during the pendency of his removal proceeding. Dkt. 1-3 at 4.

In June 2026, Castro Ramirez and his attorney notified U.S. Immigration and Customs Enforcement (ICE) officials that his ankle monitor was broken. Dkt. 1-3 at 8–11. An immigration official determined that Castro Ramirez had tampered with the monitor. Dkt. 8-1 at 3. On July 7, 2026, ICE officials terminated Castro Ramirez's parole and issued an administrative warrant

"command[ing]" that he be arrested pursuant to 8 U.S.C. § 1226. Dkt. 8-1 at 8, 10. ICE officers arrested Castro Ramirez on July 7. Dkt. 8-1. He has been in ICE custody since then. He has not received a bond hearing.

## II. ANALYSIS

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Castro Ramirez argues that his detention without consideration of bond violates the Immigration and Nationality Act ("INA") and the Fifth Amendment's Due Process Clause. As a threshold matter, he also argues that the government did not lawfully revoke his parole.

### A. Parole Revocation

Immigration regulations authorize the government to terminate an alien's humanitarian parole upon written notice and "upon accomplishment of the purpose for which parole was authorized or when in the opinion of" a designated official, "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States . . . ." 8 C.F.R. § 212.5(e)(2)(i). Castro Ramirez asserts that the government "made no finding that the purpose of" his "parole had been satisfied" and "made no individualized determination that" his "parole is no longer justified by humanitarian reasons or public benefit." Dkt. 1-2 ¶¶ 88–89. The Court disagrees.

As Respondents argue, the government properly revoked Castro Ramirez's parole through the written notice of July 7, 2026. Dkt. 8-1 at 10. In that notice, an Acting Deputy Field Office Director wrote:

> Neither urgent humanitarian reasons nor significant public benefit warrant your continued parole at this time. As an authorized delegated official [. . .], your parole is hereby terminated, effective the date of this letter.

*Id.* Although not word for word, this notice closely tracks the regulatory language, *see* 8 C.F.R. § 212.5(e)(2)(i), and reflects that, in the terminating official's opinion, neither continued parole nor Castro Ramirez's continued presence in the United States were warranted.

In reply, Castro Ramirez does not dispute that the revocation made the necessary finding or that it was issued by an authorized official. Rather, he asserts that the terminating official reached the wrong conclusion and that he has a due process right to challenge that determination. The Court addresses the due process argument below. At this stage, the Court finds no basis for determining that Castro Ramirez's parole was revoked in a manner contrary to the governing regulation.

**B. Mandatory Detention**

Castro Ramirez next argues that Respondents violate the INA by detaining him without consideration of bond. Respondents insist that Castro Ramirez is subject to mandatory detention for the duration of his removal proceeding pursuant to 8 U.S.C. § 1225(b)(2)(A). Castro Ramirez argues instead that the government's authority to detain him comes from 8 U.S.C. § 1226(a), which makes him eligible for discretionary release on bond.

It is undisputed that at the time Castro Ramirez presented at a port of entry and was paroled he was an "applicant for admission" under the INA. As

this Court has explained elsewhere, 8 U.S.C. § 1225(a)(1) "defines an 'applicant for admission' as an alien 'who arrives in the United States' or who is 'present in' the country but 'has not been admitted.'" *Vallejos- Hernandez v. Olson*, No. 2:26-cv-00398-JRO-MG, 2026 WL 1840067, at *2 (S.D. Ind. June 26, 2026). "The Supreme Court has explained that 'applicants for admission fall into one of two categories'—'those covered by § 1225(b)(1) and those covered by § 1225(b)(2).'" *Id.* (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018)). Castro Ramirez was not covered by Section 1225(b)(1) because he was not subject to "expedited removal." *See id.* Instead, he was subject to Section 1225(b)(2), which "serves as a catchall provision that applies to all applicants for admission not covered by Section 1225(b)(1)." *Id.* (quoting *Jennings*, 583 U.S. at 287).

Section 1225(b)(2)(A) generally requires mandatory detention for aliens who are "applicants for admission":

> Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). In other words, detention is mandatory pending "the usual removal process," which "involves an evidentiary hearing before an immigration judge" where "an alien may attempt to show that he or she should not be removed."

*Id.* (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020)). However, the Seventh Circuit determined that 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention requirement applies only to aliens who are also "seeking admission" to the United States and not all aliens who merely fit the statutory

definition of "applicants for admission." As the Seventh Circuit said, "Aliens present in the country without admission and not 'seeking admission' fall under Section 1226, not Section 1225(b)(2)(A), and are eligible for bond hearings subject to the INA's other requirements." *Cirrus Rojas v. Olson*, 183 F.4th 909, 915 (7th Cir. 2026). "Admission means 'lawful entry . . . into the United States after inspection and authorization.'" *Id.* at 918 (quoting *Sanchez v. Mayorkas*, 593 U.S. 409, 411 (2021)). The Seventh Circuit further held that the ordinary meaning of "seeking admission" cannot, as a factual matter, describe aliens who "entered the United States without admission or parole" and are thus categorically "inadmissible," because "no amount of legal maneuvering allows them to go back in time and make [their] initial entry lawful." *Id.* at 920 (quoting *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1239 (10th Cir. 2026)).

The Seventh Circuit's holding in *Cirrus Rojas* does not apply to Castro Ramirez because he entered the United States as a humanitarian parolee after presenting himself at a port of entry. Accordingly, he is not excluded from the Seventh Circuit's definition of "seeking admission" at the time of his entry.

Instead, as Respondents argue, Castro Ramirez remains an applicant for admission who is seeking admission under the terms of 8 U.S.C. § 1182(d)(5)(A). Dkt. 8 at 3–8. That statute says the Secretary of Homeland Security may permit an alien—specifically, an "alien applying for admission"—to enter the United States on parole. "[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien *shall forthwith return or be returned to the custody from which he was paroled.*" 8 U.S.C. § 1182(d)(5)(A)

(emphasis added). Additionally, the former parolee "shall continue to be dealt with in the same manner as that of *any other applicant for admission* to the United States." *Id.* (emphasis added).

Castro Ramirez argues that he is no longer "seeking admission" and therefore is not subject to Section 1225(b)(2)(A)'s mandatory detention scheme as interpreted by *Cirrus Rojas*. But this argument neglects Section 1182(d)(5)(A)'s directive that a parolee "return or be returned to the custody from which he was paroled" upon revocation. Castro Ramirez was granted parole after he presented for inspection and sought admission at a port of entry. Indeed, his parole was statutorily authorized because he was an "alien *applying for admission*." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). The INA directs that, upon revocation of his parole, he must "be returned to the custody from which he was paroled" (namely, an alien applying for admission) and "continue to be dealt with" as an applicant for admission. Due to the termination of his parole, and by operation of law, Castro Ramirez is subject to mandatory detention without bond pursuant to Section 1225(b)(2)(A) as an applicant for admission who is seeking admission.

## C. Due Process

Finally, Castro Ramirez argues that his detention without a bond hearing and the revocation of his parole violate the substantive and procedural components of the Fifth Amendment's due process clause.

### 1. Substantive Due Process

The Due Process Clause applies to aliens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent."

*Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). As the Seventh Circuit recently said, "[a]rticulating a substantive due process right requires 'a careful description of the asserted fundamental liberty interest' claimed to be violated." *Doe v. Sloan*, 172 F.4th 955, 958 (7th Cir. 2026) (cleaned up) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) and *Christensen v. Cnty. of Boone*, 483 F.3d 454, 462 (7th Cir. 2007)). The "specific interest must be grounded in '[o]ur Nation's history, legal traditions, and practices.'" *Id.* (quoting *Glucksberg*, 521 U.S. at 721). The Seventh Circuit cautioned that "the 'scope of substantive due process is very limited,' and that judges should be 'reluctant to expand the concept.'" *Id.* (quoting *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019)).

Castro Ramirez does not carefully describe a fundamental liberty interest. Rather, he states only that he "has a fundamental interest in liberty and being free from official restraint." Dkt. 1-2 ¶ 98.

Even assuming (without deciding) that Castro Ramirez *has* correctly articulated a fundamental liberty interest, that interest is not violated here. In fact, Castro Ramirez is free to live at liberty without detention, just not in this country. Under similar circumstances, the Seventh Circuit has held that the operative liberty interest "is not liberty in the abstract, but liberty *in the United States* by someone no longer entitled to remain in this country but eligible to live at liberty in his native land." *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999); *cf. Bolante v. Keisler*, 506 F.3d 618, 621 (7th Cir. 2007) (denying Eighth

Amendment bail to alien subject to removal because he was not lawfully admitted to the United States).

Accordingly, Castro Ramirez's liberty interest is constitutionally circumscribed by the procedures mandated by the INA, "[g]iven the sweeping powers Congress possesses to prescribe the treatment of aliens." *Parra*, 172 F.3d at 958 (citing *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)); *accord Rodriguez v. Olson*, 814 F. Supp. 3d 945, 963 (N.D. Ill. 2026) ("Under *Parra*, because petitioner does not attempt to argue that he is 'entitled to remain in' the United States, his private interest in release pending his removal proceedings is relatively minimal."). The Seventh Circuit's narrower view of Castro Ramirez's liberty interest as an alien who is not lawfully present was upheld by the Supreme Court in *Demore v. Kim*. 538 U.S. 510, 516 (2003) (favorably citing *Parra*). Castro Ramirez's detention therefore does not violate substantive due process. *E.g.*, *Sebastian v. Olson*, No. 2:26-cv-00324-JRO-MKK, 2026 WL 1683618, at *10 (S.D. Ind. June 10, 2026).

**2. Procedural Due Process**

Castro Ramirez also asserts a procedural claim, arguing that the Due Process Clause entitles him to an opportunity to challenge his detention (on grounds that he is neither a flight risk nor a danger to the community) and the revocation of his parole was irrational. Dkt. 1-2 ¶ 104; Dkt. 12 at 5. The Supreme Court has held that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore*, 538 U.S. at 531. That holding settles the issue.

Petitioner argues that due process requires an "individualized determination of whether he poses a flight risk or danger to the community." Dkt. 1-2 ¶ 104. But the Supreme Court already anticipated this objection and rejected it: "[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528. Applied to Castro Ramirez, this means that Respondents do not have to justify mandatory detention on a case-by-case basis. Respondents may enforce the policy Congress already adopted when it enacted the mandatory detention provision in Section 1225(b)(2)(A) without an individualized bond hearing.

Petitioner cites *Zadvydas*, 533 U.S. at 701, *see* dkt. 12 at 10, but that case is distinguishable. There, the Supreme Court addressed whether a post-removal-period detention statute authorized potentially indefinite detention. In construing the statute to reject that conclusion, the Supreme Court specifically distinguished the due process issues inherent in the petitioner's indefinite detention from "detention pending a determination of removability," which has an "obvious termination point." *Zadvydas*, 533 U.S. at 697. Castro Ramirez's detention here is a detention pending removal proceedings. Thus, it does not implicate the due process concerns addressed in *Zadvydas*.

And even in cases like *Zadvydas*—where the Supreme Court held that removal is "no longer practically attainable," *id.* at 690, thereby eliminating the premise for detention pending removal—detention for up to six months was presumptively constitutional, *id.* at 701. Castro Ramirez has been detained by

ICE pending his removal proceedings for approximately three months. Accordingly, Petitioner's current detention by ICE does not violate his due process rights. *E.g.*, *Sebastian*, 2026 WL 1683618, at *10.

## III. CONCLUSION

Castro Ramirez's petition for a writ of habeas corpus is **DENIED**. The **clerk is directed** to enter **final judgment**.

**SO ORDERED.**

Date: 10/9/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

Angelika Delilah Charczuk
ADC Immigration Law
ang@adcimmigration.com

Liberty L. Roberts
Church Church Hittle & Antrim
lroberts@cchalaw.com

Paul Umbaugh, IV
DOJ-USAO
paul.umbaugh@usdoj.gov